*Rehearing refused.*

---

## ED HUNTER *v.* THE STATE.

1. EVIDENCE — PRACTICE. — One of the established modes of impeaching a witness is by proving that he has made statements out of court contrary to his testimony. If the statements consist of his testimony at a previous trial, and that testimony was then reduced to writing, the writing was not only competent but the best evidence of the statements.

2. CHARGE OF THE COURT. — However correct a requested instruction may be, it is not error to refuse it when its substance has already been given in the main charge.

3. SAME — MISNOMER. — In a trial for the murder of William Redus there was evidence that the true surname of the deceased was Reder, but that he was known and often called by the name of Redus. The court charged that if the jury so found the fact, it was immaterial whether Redus was the true name or not. *Held,* correct.

4. VERDICT. — The Code of Procedure authorizes a defendant to show by the voluntary affidavit of a juror that he has not received a fair and impartial

trial, by reason of misconduct of the jury. This is a proper mode of showing that the verdict was decided otherwise than by a fair expression of opinion by the jurors.

5. Same. — Appellant was convicted of murder in the second degree, and his punishment was assessed at thirteen years in the penitentiary; which assessment was made by averaging the several assessments of the jurors, who, before making them, agreed to be bound by the result. *Held*, that the verdict is vicious. Note the distinction between this case and *Leverett* v. *The State*, 3 Texas Ct. App. 213.

Appeal from the District Court of Tarrant. Tried below before the Hon. A. J. Hood.

The appellant was indicted and tried for the murder of William Redus, by shooting him with a pistol on December 24, 1878. He was found guilty of murder in the second degree, and awarded thirteen years in the penitentiary.

The appellant, it appears, was dealing monte, when the deceased, who was looking on but not betting, interfered in the game and took from a card a stake placed on it by one Ford. This brought on an altercation, which resulted in the appellant shooting the deceased three times with a pistol, and causing his death. All parties, it seems, were negroes. The deceased was known by the name of Redus as well as by that of Reder, which, according to some of the witnesses, was his true name. The opinion discloses all other requisite facts.

*Robert McCart*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

Winkler, J. On the trial below, a witness for the prosecution named Fayette Walden having testified, the defendant sought to impeach his credibility by proving that he had, on an examining trial of the defendant before a justice of the peace, testified differently from what he had sworn on the trial then going on before the court, and, on the cross-examination of the witness, laid the proper predicate for the introduction of his testimony taken before the

justice of the peace, and offered to introduce it in evidence, which was objected to by the counsel for the State. The court sustained the objection, and the defendant excepted to the ruling of the court, and took his bill of exceptions.

It is one of the established modes allowed by law for the impeachment of a witness, to show that he has made statements out of court contrary to what he has testified to at the trial. 1 Greenl. on Ev., sect. 462. The precise opinion of the judge upon which his ruling was based seems not to be a failure to recognize this mode of impeaching a witness, but rather that it was incompetent to make the proof by the production of the written testimony, taken at a former trial, for that purpose. This view is gathered from a statement appended by the judge to the bill of exceptions. In this view we do not concur. If the witness had made statements on a former trial different from his testimony given at the trial when the impeachment is sought, we are of opinion it comes within the rule laid down above, as a statement made out of court contrary to what he had testified on the trial. And the evidence being admissible for the purpose of discrediting his testimony, and his statements having been reduced to writing, that writing was, by all the rules of evidence, the best evidence on the subject. We are of opinion that, for the purpose for which it was offered, the defendant was entitled to the benefit of it for what the jury might have considered it worth, and that it was error to exclude it from the jury.

Another question is presented by a bill of exceptions. The court, in its general charge, gave the jury, among other things, the following instruction:—

" In this case it is alleged in the indictment that the name of the party alleged to be murdered is William Redus, and it is set up as a matter of defence that the name of said party is William Reder. Should you find that the name of the party slain was William Reder, and not William Redus, you will acquit the defendant on this ground, unless you

further find from the evidence that the party slain was also sometimes called William Redus, and known by that name; for the law is, that if the party slain was called by some people William Redus, and so known, it is wholly immaterial whether that was his true name or not."

Counsel for the defendant, not being satisfied with the instruction of the court on the subject of the name of the party slain, requested the court to give to the jury the following charge:—

"That the defendant is indicted and placed upon trial for killing William Redus, and if the jury find, from the evidence, that the deceased's name was William Reder, and not William Redus, then there is a variance between the name charged in the indictment and the proof, and the jury will, in this event, find the defendant not guilty."

The court declined to give the special charge asked, and the defendant took his bill of exceptions to the ruling. In this ruling of the court we find no material error. Whilst it is considered that the special charge asked and refused enunciates a correct principle of law, yet the court having substantially given the jury an instruction embodying the same principle, it was not incumbent on him to repeat it at the request of the defendant. *Phillips* v. *The State*, 6 Texas Ct. App. 44.

In that portion of the charge in which the jury are instructed that if they find from the evidence that the party slain was also called William Redus, and known by that name, etc., and in which the jury are instructed that "if the party slain was called by some people William Redus, and so known, it is wholly immaterial whether that was his true name or not," the court committed no error. A question quite similiar to the one here presented arose in *Henry* v. *The State*, 7 Texas Ct. App. 388. That case, and the authorities there cited, fully sustain the charge of the court in the present case. See also *Cotton* v. *The State*, 4 Texas, 260. We find no error in the charge of the court;

on the contrary, the jury were properly instructed as to every legitimate view they could take of the evidence adduced on the trial.

In one other respect, however, we are not satisfied with the ruling of the court. The record shows that the defendant set up, in an amendment to his motion for a new trial, the fact that the jury decided by lot what should be their verdict. In other words, it is shown by affidavits appended to the amended motion for a new trial that the verdict was arrived at in this manner: "It was agreed that each juror should write down his individual verdict of guilty and the number of years of imprisonment in the State prison, and the number of years thus set down by each juror were added together and divided by twelve, and the quotient should be the verdict of the entire jury; and that it was further agreed, before the amount was ascertained, that they would be bound by the result, and the jurors were to abide by it." The extreme vice and folly of such a practice will be seen by this further extract from the affidavit of one of the jurors, to wit: "Affiant further states that some of the jurors, after said agreement was made, in order to increase the number of years of imprisonment for defendant, marked down their verdict at twenty, and even up to fifty years, and thereby entrapped affiant."

These affidavits are uncontradicted, and, for aught that appears to the contrary, they were voluntarily made. It is provided in the Code of Criminal Procedure, art. 777, that new trials, in cases of felony, shall be granted for certain causes therein mentioned, and for no other. Among the enumerated causes is that set out in subdivision 3, where the verdict is decided by lot, or in any other manner than by a fair expression of opinion by the jurors; and in subdivision 8 of the article, as follows: "Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial, and it shall be competent to prove such misconduct by the volun-

tary affidavit of a juror; and a verdict may in like manner, in such cases, be sustained by such affidavit." The practice of permitting jurors to impeach their verdicts by exposing their own misconduct is to be reprehended rather than encouraged, but still the law seems to provide that their misconduct may be exposed by their own affidavits, when voluntarily made. *Anschicks* v. *The State*, 6 Texas Ct. App. 524, and authorities there cited.

It may seem, at first view of the agreement entered into by the jurors, that they had determined and agreed upon a verdict of guilty anterior to the agreement, and that the agreement embraced no more than to fix the term of punishment. If this were the case, the question would bear some analogy to the rule laid down in *Hundley* v. *Leigh*, 8 Texas, 129, where the jury, having apparently agreed to find for one of the parties the value of certain personal property, fixed the amount of their verdict by each juror setting down the amount which he was in favor of finding, and dividing by the number of jurors. In the present case it is not shown what grade of the crime the jury had agreed to convict for, if indeed they had so agreed; but however this may be, in view of the fact that under our system of criminal jurisprudence the jurors must not only pass on the question of the guilt or innocence of one on trial for crime, but, except in isolated cases where the penalty is fixed by law, the jurors are charged with the further duty of fixing the punishment, we are of opinion the defendant was entitled to a fair expression of the opinion of each individual juror, not only as to his guilt or innocence, but also as to the amount of punishment to be inflicted if found guilty, and that the improper mode by which they arrived at their verdict deprived the defendant of a fair trial. In the case of *Leverett* v. *The State*, 3 Texas Ct. App. 213, where a verdict was obtained by means similar to those employed in the present case, the court refused to disturb the finding, because it was not shown that the jurors, before making

the computation, agreed to be bound by the result. The difference between the two cases on this subject is, that in Leverett's case the jurors did not agree to be bound by the result, whilst in the present case the jury did agree to be bound by the result. There is another, perhaps unimportant, difference : as to the way in which proof was made as to the manner of proceeding adopted by the juries in attaining the result.

For the errors above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*